IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Tyrone Ransom, ) | |
| ) | Civil Action No. 6:12-3141-JFA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Lt. Lawrence, Mr. Tucker, ) | |
| Sgt. Jefferson, Sgt. King, ) | |
| Counselor Aiken, and Counselor Birch, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 25) and the plaintiff's motion for summary judgment (doc. 49). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the District Court.

On February 15, 2013, the defendants filed a motion for summary judgment (doc. 25). By order filed February 19, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a motion to strike the defendants' motion for summary judgment on February 25, 2013. That motion was denied by the Honorable Joseph F. Anderson, Jr., United States District Judge, on April 9, 2013. On April 24, 2013, the plaintiff filed his own motion for summary judgment (doc. 49), which has also been construed by this court as a response in opposition to the defendants' motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff is an inmate in the custody of the South Carolina Department of Corrections ("SCDC") and is incarcerated at Lieber Correctional Institution. He alleges that on March 7, 2011, he was asleep when he was stabbed by his cellmate, Antonio Grate (comp. ¶ 21). The plaintiff claims he made several complaints about the behavior of Grate (*id.* ¶ 39). At the time of the incident, defendant Lawrence was the Dorm Lieutenant for the Ashley Unit at Lieber; defendant Tucker was a Classification Case Worker; defendant Jefferson was the Sergeant for the B-1 shift at Lieber; defendant King was the Sergeant for the A-1 shift at Lieber; and defendants Birch and Aiken were Mental Health Counselors.

Defendants Lawrence, Jefferson, King, and Birch have submitted affidavits stating that the plaintiff did not indicate to them that he had concerns about Grate attacking him or that Grate had violent propensities or mental health issues (docs. 25-2, 25-4, 25-5, 25-6; Lawrence aff. ¶ 8; Jefferson aff. ¶ 8; King aff. ¶ 8; Birch aff. ¶¶ 6-8). Defendant Tucker, who is a Classification Case Worker, stated in his affidavit that he reviewed the plaintiff's and Grate's records with respect to separation requirements, prior history of assaultive or violent offenses, disruptive group affiliations, violent or passive tendencies, degree and nature and nature of criminal history, sexual behavior, physical characteristics, mental health classifications, and requests for housing assignments prior to assigning the plaintiff and Grate as cellmates, as required by SCDC Policy OP 21.04.47-48. Defendant Tucker stated in his affidavit that at the time of the incident, both the plaintiff and Grate shared the same mental health classification. Defendant Tucker further testified that he had no notice or knowledge that Grate might assault the plaintiff or that Grate had violent propensities or mental health issues (doc. 25-3, Tucker aff. ¶¶ 5-11, ex. A). Rickie Bellinger, a State Classification Worker for the SCDC, submitted an affidavit in which he stated that there were no separation requirements between the plaintiff and Grate on or before March 7, 2011 (doc. 25-7, Bellinger aff. ¶¶ 6-8).

2

The plaintiff claims that the defendants, all employees of the SCDC, violated his Eighth Amendment rights when they failed to protect him from Grate, whom the plaintiff believes suffered from a mental illness (comp. ¶¶ 37, 39). The plaintiff alleges "Officer Smith," who is not a defendant, reviewed Grate's journal, which supposedly documents mental health issues (*id.* ¶ 37). The plaintiff pleads no facts about any named defendant in his complaint. The plaintiff only pleads facts with respect to Sgt. Nunnery, Nurse Brown, Nurse Scott, Cpt. Coate, and "Officer Smith," none of whom are named defendants (*id.* ¶¶ 22-26, 37). In his affidavit submitted in support of his motion for summary judgment and his response in opposition to the defendants' motion, the plaintiff stated that before the incident, he spoke to all of the defendants "about the behavior of one Antonio Grate, his blackouts, punching on walls, kicking the bed frame with his feet, talking to himself, and lastly him having seizures" (doc. 51-2, pl. aff. ¶ 6). The plaintiff further stated that "[b]ased upon me talking with all the defendants, I do not think that I was going to be stabbed. However, I do believe that Antonio Grate was a very violent and unstable individual [whose] actions could have been properly neutralized by each defendant if the proper attention was taken to give treatment, security and classification" (*id.* ¶ 7). The plaintiff seeks monetary damages and injunctive relief (*id.* ¶¶ 42-46).

Inmate Grate's medical records show that he was transferred from Lee Correctional Institution to Lieber in January 2011. On January 20, 2011, he was seen in the medical clinic for his screen-in procedure. Grate reported "severe episodes of thrashing around, especially at night." It was noted that he had been seen by a neurologist who found no neurological problems. On January 25, 2011, Grate was seen at sick call complaining of having episodes of kicking, flailing arms and legs, jerking wildly, and making strange noises. Grate presented a log of the episodes. While Grate was in the waiting room, the nurse observed him have an episode. Grate was prescribed Baclofen and was referred to the mental health clinic for an evaluation. The plaintiff was seen in the mental health clinic

on that same date for an initial assessment by defendant Aiken. She noted that Grate's episodes "are accompanied by gruntin[g] sounds as [reported] by cellmates. [Inmate reported] sustaining injuries during episodes." A referral to "psych clinic" was made. On February 1, 2011, Grate was seen at sick call reporting that he was still having seizures. It was noted that no effect had been seen from the Baclofen thus far. The doctor noted that he would "try to facilitate referral for psych" (doc. 51-3 at pp. 1-2).

Grate was seen by the mental health clinic on February 15, 2011. It was noted that the plaintiff did not have a psychiatric history, and he had a several year history of seizure-like activity. Grate reported that most of the episodes were at night, and he injured himself in some episodes. Grate was prescribed Depakote (doc. 25-3 at p. 7). The plaintiff's next visit to the mental health clinic was the day after he stabbed the plaintiff at which time it was noted that Grate was currently classified "NMH" or "no mental health treatment," but such classification would be changed "to reflect L3 area mental health" (*id.* at pp. 6-7). Grate's pertinent inmate offense history shows that, prior to the incident at issue here, he was convicted of striking an employee in 2006 and striking an inmate in 2009 (doc. 25-8).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Eleventh Amendment Immunity***

The defendants are all employees of the SCDC and thus are not subject to suit under § 1983 when sued in their official capacities. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent the plaintiff has alleged claims against the defendants in their official capacities, those claims must be dismissed because the defendants are entitled to immunity pursuant to the Eleventh Amendment.

*Failure to Protect*

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, "[n]ot every injury suffered by a prisoner at the hands of another establishes liability against a prison official ...." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010). As the Fourth Circuit recently stated in *Bacchus v. Scarborough*,

> To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." *Id*. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).

466 Fed. Appx. 269, 271 (4th Cir. 2012). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837.

The plaintiff has presented evidence that defendant Aiken was aware that Grate sometimes injured himself during his "episodes" (doc. 51-3 at pp. 1-2). Further,

there is evidence that Grate was charged in 2009 with striking another inmate (doc. 25-8). The plaintiff stated in his affidavit that before the incident, he spoke to all of the defendants "about the behavior of one Antonio Grate, his blackouts, punching on walls, kicking the bed frame with his feet, talking to himself, and lastly him having seizures" (doc. 51-2, pl. aff. ¶ 6).

This court finds that while the plaintiff has established that he suffered a serious physical injury at the hands of inmate Grate, he has failed to show that the defendants had actual knowledge that housing inmate Grate with him posed a substantial risk of harm to the plaintiff and that they disregarded that risk. *See Baze v. Rees*, 553 U.S. 35, (2008) (noting that the Eighth Amendment protects against a risk of future harm that is "'sure or very likely to cause serious illness and needless suffering'") (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). While the evidence, viewed in a light most favorable to the plaintiff, shows that the defendants may have been aware of Grate's blackouts and seizures, this does not indicate a "substantial risk" that Grate was very likely to assault the plaintiff absent intervention by the defendants. Moreover, the fact that defendant Tucker reviewed the plaintiff's and Grate's institutional records prior to assigning them as cellmates and thus he would have been aware that Grate had been previously convicted in 2009 of striking another inmate, does not show that Tucker disregarded a "substantial risk" that Grate would assault the plaintiff. "[I]n a prison setting, confrontations among inmates are daily occurrences." *Drayton v. Cohen*, C.A. No. 2:10-3171-TMC, 2012 WL 666839, at *6 (D.S.C. Feb. 29, 2012). There is no evidence here that the plaintiff complained to the defendants that Grate had assaulted him or even threatened him prior to the assault. Unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *Id.* (citing *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997)). Here, it is apparent that even the plaintiff did not make the

7

inference that he was at substantial risk of serious harm at the hands of Grate; in his affidavit, the plaintiff stated that "[b]ased upon me talking with all the defendants, I do not think that I was going to be stabbed. However, I do believe that Antonio Grate was a very violent and unstable individual [whose] actions could have been properly neutralized by each defendant if the proper attention was taken to give treatment, security and classification" (doc. 51-2, pl. aff. ¶ 7). Based upon the foregoing, the record cannot, as a matter of law, support a failure to protect claim.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 25) be granted and the plaintiff's motion for summary judgment (doc. 49) be denied.

IT IS SO RECOMMENDED.

May 3, 2013                                                                 s/ Kevin F. McDonald
Greenville, South Carolina                                          United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).